**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **7-ELEVEN, INC.,** | § | |
| Plaintiff, | § | |
| v. | § | Case No. |
| **SUNG HUN CHOE,** | § | |
| Defendant. | § | |

# COMPLAINT

Plaintiff 7-Eleven, Inc. ("**7-Eleven**") sues Defendant Sung Hun Choe ("**Mr. Choe**") and alleges:

## Parties

1. 7-Eleven is a corporation organized and existing under the laws of the state of Texas with its principal place of business in Irving, Texas.

2. Mr. Choe is an individual residing in and a citizen of Monterey County, California.

## Jurisdiction and Venue

3. Subject matter jurisdiction in this matter is founded upon 28 U.S.C. § 1332(a) in that this is a civil action where the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred in this District. The parties also agreed in the Franchise Agreement to bring all judicial actions in the state or federal court of general jurisdiction located closest to where 7-Eleven has its principal place of business when the action is commenced.

**7-Eleven® Franchising**

5. 7-Eleven is an operator and franchisor of convenience store retail businesses. 7-Eleven has developed methods and procedures, called a "system," used in the operation of convenience store businesses. To identify the source, origin, and sponsorship of 7-Eleven® convenience stores and the services they offer, and to distinguish its convenience stores and associated products and services from those offered and sold by others, 7-Eleven has extensively used trademarks and service marks (the "**7-Eleven Marks**"),

6. Through written franchise agreements, 7-Eleven licenses the use of the 7-Eleven Marks and its system of operating convenience stores to others, requiring them to operate uniformly and in accordance with 7-Eleven's specifications in order to protect 7-Eleven's image and brand.

7. In exchange, a 7-Eleven® franchisee must pay to 7-Eleven a defined percentage of its gross profit (net sales less cost of goods sold), called the 7-Eleven Charge.

8. Other salient features of the 7-Eleven® franchise system include:

A. The Open Account: 7-Eleven extends financing to its franchisees for use in the operation of franchised stores. The amount financed by 7-Eleven and the balance due from its franchisee is maintained in an account defined in the franchise agreement as the "**Open Account**." Essentially, the Open Account is a running working capital account that carries the outstanding balance that 7-Eleven has loaned to the franchisee. In exchange for the financing provided by 7-Eleven, the franchisee grants a security interest to 7-Eleven in, among other things, the store's inventory and proceeds.

B. Retail Information Systems: 7-Eleven® franchisees must use a proprietary Retail Information System computer system and software having various point-of-sale, inventory management, and back-office functions. Through this Retail Information System, a franchisee reports virtually all store transactions to 7-Eleven, including sales, inventory acquisitions and adjustments, payroll, etc.

C. Inventory Reporting & Accounting: A franchisee can finance its purchase of store inventory through the Open Account or purchase inventory with cash. In either instance, the franchisee is obligated to report the inventory transaction and submit the related invoice to 7-Eleven.

D. Cash Reports: 7-Eleven® franchisees must prepare and transmit to 7-Eleven a daily cash report ("**Cash Report**"). Among other things, the Cash Report sets forth the daily sales and whether those sales were for cash or credit. The Cash Report also accounts for deductions from cash receipts that affect the daily deposit, such as a franchisee's cash payment to a vendor to acquire merchandise for sale in the store.

E. Daily Deposit: The cash receipts of the franchise business must be deposited into a bank account controlled by 7-Eleven. The Cash Report is a critical component of balancing the Store's transactions and ensuring the bank deposit amount equals the total cash receipts and other cash transactions conducted by the Store.

F. Minimum Net Worth: Most 7-Eleven® franchised stores must maintain a "Minimum Net Worth" of $10,000 or $15,000 depending on the date of their franchise agreement. A franchisee's "**Net Worth**" is essentially the sum total of its assets minus its liabilities. The Minimum Net Worth requirement is intended to protect 7-Eleven's investment in the store, its exposure for the Open Account, and to assure that 7-Eleven® franchisees are financially vested in the operation of their stores. A franchisee who contributes cash to increase the Store's Net Worth reflects that increase on the Cash Report via a "paid-in capital" contribution.

G. Monthly Financials: 7-Eleven prepares monthly financial reports called "Financial Summaries" for each store from its bookkeeping records that accumulates and sorts the information reported to it concerning the franchisee's store operations, such as sales, expenses, inventory acquisitions, and paid-in capital contributions. The Financial Summaries include, among other things, an income statement, balance sheet, and calculation of the Open Account balance and Net Worth calculated in accordance with the provisions of the franchise agreement.

## The Franchise Agreements

9. On or about December 31, 2018, Mr. Choe and 7-Eleven entered into a Franchise Agreement (the "**King City Franchise Agreement**") pursuant to which 7-Eleven granted Mr. Choe a franchise to operate a 7-Eleven store located at 801 Broadway Street in King City, California 93930 (the "**King City Store**"). A true and correct copy of the King City Franchise Agreement is attached as **Exhibit A.**

10. On or about January 31, 2019, Mr. Choe and 7-Eleven entered into a Franchise Agreement (the "**Seaside Franchise Agreement**") pursuant to which 7-Eleven granted Mr. Choe

a franchise to operate a 7-Eleven store located at 1760 Fremont Boulevard in Seaside, California 93955 (the "**Seaside Store**"). A true and correct copy of the Seaside Franchise Agreement is attached as **Exhibit B.**[1]

11. Prior to franchising the Stores, 7-Eleven had selected the location, acquired the property, and made physical improvements to the premises. 7-Eleven also outfitted the Stores with equipment for the operation of a convenience store, such as coolers, soda fountains, grills, a safe, cash registers, and so on (the "**Equipment**").

12. The Stores' premises and Equipment were leased to Mr. Choe through the Franchise Agreements.

13. 7-Eleven also provided financing to Mr. Choe, including financing for the Stores' inventory. Store inventory and other assets are subject to security interests in 7-Eleven's favor, which secure all indebtedness of Mr. Choe to 7-Eleven.

14. Mr. Choe agreed in the Franchise Agreements, among other things, to maintain a Minimum Net Worth of at least $10,000 (Section 13(d)).

15. In Section 26(b)(6) of each Franchise Agreement, Mr. Choe agreed that 7-Eleven could immediately terminate the Franchise Agreement if the Net Worth for the Store fell below the required Minimum Net Worth, and Mr. Choe did not correct the failure within three (3) days after delivery of written notice.

16. Mr. Choe further agreed in Section 26(a)(10) of each Franchise Agreement that 7-Eleven may terminate the Agreement immediately, and without providing Mr. Choe with an opportunity to cure, if Mr. Choe failed on four (4) or more separate occasions within any twenty-

---

[1] The King City Store and Seaside Store are collectively referred to herein as the "**Stores**," and the King City Franchise Agreement and Seaside Franchise Agreement are collectively referred to herein as the "**Franchise Agreements**."

four (24) consecutive month period to comply with the terms of the Agreement, whether or not Mr. Choe corrected the failures after 7-Eleven's delivery of notice to Mr. Choe.

**Mr. Choe's Termination of the Seaside Franchise Agreement**
**and Surrender of the Seaside Store**

17. On November 15, 2023, Mr. Choe provided 7-Eleven with written notice that he intended to terminate the Seaside Franchise Agreement and surrender possession of the Seaside Store back to 7-Eleven.

18. On or around December 15, 2023, Mr. Choe terminated the Seaside Franchise Agreement and surrendered possession of the Seaside Store back to 7-Eleven.

**Mr. Choe's Repeated Breaches Of His Financial Obligations**
**Under The King City Franchise Agreement**

19. Beginning in 2023, Mr. Choe repeatedly failed to comply with his financial obligations under the King City Franchise Agreement.

20. On May 9, 2023, 7-Eleven issued to Mr. Choe a Notice of Material Breach because Mr. Choe failed to make timely deposits and timely submit the required Cash Reports to 7-Eleven.

21. A little over one month later, on June 15, 2023, 7-Eleven issued to Mr. Choe a Notice of Material Breach because Mr. Choe took over $40,000 in unauthorized draws from the King City Store.

22. Around eight months later, on February 19, 2024, 7-Eleven issued to Mr. Choe another Notice of Material Breach because Mr. Choe took over $25,000 in unauthorized draws from the King City Store.

23. On March 22, 2024, 7-Eleven issued to Mr. Choe a Notice of Material Breach – Minimum Net Worth because the Financial Summaries for the Store as of February 29, 2024 reflected a Net Worth of -$123,524.78 – which was $133,524.78 less than the required Minimum

Net Worth of $10,000. 7-Eleven provided Mr. Choe with seven (7) calendar days to cure, but warned Mr. Choe that if he did not cure its default, 7-Eleven may terminate the King City Franchise Agreement.

24. Also on March 22, 2024, 7-Eleven issued to Mr. Choe another Notice of Material Breach because Mr. Choe took over $25,000 in unauthorized draws from the King City Store

**Termination Of The King City Franchise Agreement**

25. Mr. Choe did not cure the March 22, 2024 Notice of Material Breach – Minimum Net Worth. Accordingly, on May 13, 2024, 7-Eleven delivered to Mr. Choe a Notice of Termination (the "**Termination Notice**"). A true and correct copy of the Termination Notice is attached as **Exhibit B**.

26. As set forth in the Termination Notice, 7-Eleven terminated the King City Franchise Agreement because (i) Mr. Choe failed to cure the March 22, 2024 Notice of Material Breach – Minimum Net Worth, and (ii) Mr. Choe's repeated breaches of the King City Franchise Agreement.

27. In the Termination Notice, 7-Eleven declared Mr. Choe's sublease and Equipment lease terminated and demanded that Mr. Choe comply with his post-termination obligations under the King City Franchise Agreement, including that he quit the premises and deliver possession to 7-Eleven and transfer the King City Store's inventory to it on May 15, 2024.

28. Mr. Choe surrendered the King City Store to 7-Eleven on May 15, 2024.

**Mr. Choe's Failure To Pay The Open Account Balances**

29. Following the termination of the Seaside Franchise Agreement, 7-Eleven determined through the account close out process described in Sections 28(b) and 28(c) of the Seaside Franchise Agreement that the balance owing from Mr. Choe to 7-Eleven on the Open

Account was $244,428.09 and delivered final Financial Summaries and a Final Settlement Statement demanding payment on or around April 12, 2024.

30. Similarly, following the termination of the King City Franchise Agreement, 7-Eleven determined through the account close out process described in Sections 28(b) and 28(c) of the King City Franchise Agreement that the balance owing from Mr. Choe to 7-Eleven on the Open Account was $566,210.02 and delivered final Financial Summaries and a Final Settlement Statement demanding payment on or around September 20, 2024.

31. Notwithstanding Mr. Choe's agreement in Section 28(c) of the Franchise Agreements to immediately pay any debit balance on the Open Account and 7-Eleven's demand for payment, Mr. Choe has not paid the amounts owed to 7-Eleven under the Franchise Agreements.

32. 7-Eleven has at all times complied with and performed its obligations under the Franchise Agreements.

33. All conditions precedent to bringing this suit have occurred, have been satisfied, or have been waived.

**COUNT I - BREACH OF CONTRACT – KING CITY FRANCHISE AGREEMENT**

34. 7-Eleven repeats and realleges paragraphs 1 through 33 above.

35. In the King City Franchise Agreement, Mr. Choe promised, among other things, to immediately pay the Open Account balance upon 7-Eleven's delivery of the Final Financial Summaries.

36. Mr. Choe violated the King City Franchise Agreement by failing to pay the Open Account balance when due.

37. Mr. Choe's violation of the King City Franchise Agreement has caused 7-Eleven to suffer money damages in at least the amount of $566,210.02.

**COUNT II - BREACH OF CONTRACT – SEASIDE FRANCHISE AGREEMENT**

38. 7-Eleven realleges paragraphs 1 through 33 above.

39. In the Seaside Franchise Agreement, Mr. Choe promised, among other things, to immediately pay the Open Account balance upon 7-Eleven's delivery of the Final Financial Summaries.

40. Mr. Choe violated the Seaside Franchise Agreement by failing to pay the Open Account balance when due.

41. Mr. Choe's violation of the Seaside Franchise Agreement has caused 7-Eleven to suffer money damages in at least the amount of $244,428.09.

**PRAYER FOR RELIEF**

**WHEREFORE**, 7-Eleven requests the following relief against Sung Hun Choe:

A. That judgment be entered in favor of 7-Eleven and against Sung Hun Choe for such damages as 7-Eleven has sustained by reason of Sung Hun Choe's breaches of the Franchise Agreements;

B. That judgment be entered in favor of 7-Eleven and against Sung Hun Choe for the costs and expenses, including reasonable attorneys' fees, incurred by 7-Eleven in connection with this action as provided for by contract; and

C. Such other and further relief as this Court deems just and proper.

Dated: September 9, 2026

Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/ Brandon A. Fuqua*
Brandon A. Fuqua
State Bar No. 24078522
brandon.fuqua@us.dlapiper.com
1900 N. Pearl Street, Suite 2200
Dallas, Texas 75201
Tel. (214) 743-4500

***Attorney for Plaintiff 7-Eleven, Inc.***